CLIFFORD BELL, Adm'r of the Estate of Bradley Scott Bell, Deceased, Plaintiff-Appellant, v. LINCOLN ELECTRIC COMPANY, Defendant-Appellee.

Fifth District    No. 5—91—0335

Opinion filed March 10, 1994.

CHAPMAN, J., dissenting.

Law Offices of Morris Lane Harvey, of Fairfield, for appellant.

Paul R. Lynch and Nancy R. Kuhnke, both of Craig & Craig, of Mt. Vernon, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Clifford Bell, administrator of the estate of Bradley Scott Bell, deceased, filed this strict liability action against defendant, the Lincoln Electric Company, in the circuit court of White County, seeking damages for the electrocution death of Bradley Scott Bell. The jury returned a verdict for defendant, and the trial court entered judgment accordingly. Plaintiff appeals that judgment, contending: (1) that the evidence established, as a matter of law, that defendant had a duty to warn of the danger of electric shock posed by the welding unit's energized handle screw; (2) that evidence establishes the existence of a duty to warn the user of the unit of the hazards of using the unit under wet conditions; (3) that the evidence establishes, as a matter of law, that the warnings provided by defendant were inadequate; and (4) that the trial court should have directed a verdict in favor of plaintiff. We reverse and remand.

On November 26, 1985, decedent was electrocuted while holding an electric welder manufactured by defendant. At the time of his death, decedent was employed as a tank-truck driver by Otho Wilson, Jr., owner of the Double D Tank Service. On the morning of November 26, 1985, decedent hauled salt water for his employer. It was raining heavily, and his clothing was wet from the salt water and the rain. Decedent returned to the Double D building at

approximately 11:30 a.m. and ate lunch. After he finished eating, decedent told co-worker Carl Knight that he was going to do some welding on his pickup truck. Decedent went inside a metal building with a dirt floor. The floor was muddy, and there were areas of standing water from the rain. Knight went outside and heard decedent yell. Knight ran into the building and found decedent lying on the floor, holding the electrode holder handle of a Lincoln Model AC-225-S arc welder. Otho Wilson owned the welder, and it was manufactured by defendant.

Someone called an ambulance, but no one was able to resuscitate decedent. Carl McVey, White County coroner, examined the scene and determined that the cause of death was an electrical current transversing decedent's heart, causing ventricular fibrillation and immediate death. McVey also noticed that decedent's gloves were wet and that the left glove had a hole in the palm area near the thumb. Examination of the scene indicated that a welding arc had not been struck but the welder had been turned on and was still on when Knight found decedent's body. The parties stipulated that the electrical current entered decedent's body from an exposed metal screw head protruding through the insulated electrode holder handle. The screw held the handle in place and had not been altered since the original purchase.

At trial, evidence was presented that defendant manufactured the welder in April 1979. Otho Wilson bought the unit several years prior to decedent's death and did not assemble or alter the electrode holder handle. Wilson was not able to locate any pamphlets or literature which may have accompanied the unit when he purchased it.

Plaintiff presented a video deposition of Raymond Cebul, who stated that he designed the Lincoln AC-225-S welder in 1963 or 1964. It was designed for use by amateurs who do only occasional welding. In 1976, defendant incorporated the Lenco electrode holder handle into the AC-225-S unit. Lenco provided the holder pursuant to specifications by Cebul for defendant. Prior to adopting the Lenco holder, Cebul had it evaluated and tested for performance.

The electrode holder handle was fastened to the electrode by a metal screw that screwed into a part of the unit carrying electricity. The hole through which the screw passed was larger than the head of the screw. Between 1976 and 1980, the electrode holder and handle underwent several design changes. In September 1977, the screw hole was made smaller because there was a perceived potential for electric shock in having the hole larger than the screw's head. The purpose of the change was to attempt to prevent the user from

removing the screw and putting it back in from the outside. Such an assembly could cause electric shock.

When defendant requested alternatives to the larger hole, Lenco suggested three options: use of a nylon insulated screw, use of a smaller hole, or use of a "pan head" screw instead of a regular screw. Defendant chose the option of making the hole smaller. The hole size was decreased, and the assembly instructions changed, so the head of the screw would be completely inside the hole.

The written material provided with the model used by decedent consisted of a "weldor's [sic] guide." The guide instructs how the electrode cable should be attached to the holder of the AC-225-S unit. Page 3, paragraph 6, of the welder's guide states, "the locking screw of the handle should be screwed *in* until tight," and "the head of the screw will be *completely inside* the handle." (Emphasis in original.)

Beginning July 21, 1980, the following warning was affixed to the electrode holder handle adjacent to the electrode holder screw:

> "Warning—electric shock can be fatal; before turning on welder check the electrode holder to be sure that there are no protruding screw heads and that all insulation is secure."

The above warning was on a yellow tag affixed to the black insulated handle. Defendant's product safety director from the early 1970's to 1984, Theodore Ashton, testified that it was common knowledge at Lincoln prior to April 1979 that protruding screw heads could facilitate an electric shock. Ashton also stated that the warning on the electrode holder handle was necessary to the safe operation of the unit. Similar warnings were given to users in the welder's guide accompanying the unit in question, but no warning sticker was affixed to the unit itself.

After the close of evidence, the jury returned a verdict for defendant. The trial court rendered judgment on the verdict, and plaintiff filed a post-trial motion, which the trial court denied. Plaintiff appeals from the judgment and the order denying his post-trial motion.

■ The first issue we are asked to address is whether the evidence established, as a matter of law, that defendant had a duty to warn of the danger of electric shock posed by the screw in the electrode holder handle. It is well settled that a product may be unreasonably dangerous if the manufacturer failed to warn or failed to give adequate warning of a condition which it knew or should have known was dangerous. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 158, 507 N.E.2d 1213, 1228.) A failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 29, 402 N.E.2d 194, 196; *Lawson v. G.D.*

*Searle & Co.* (1976), 64 Ill. 2d 543, 551, 356 N.E.2d 779, 783.) For there to be a duty to warn, it must be objectively reasonable to expect the user of the manufacturer's product to be injured in the manner in which plaintiff was injured. (*Renfro*, 155 Ill. App. 3d at 158, 507 N.E.2d at 1228.) The determination of whether a duty to warn exists is a question of law and not of fact. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471; *Renfro*, 155 Ill. App. 3d at 158, 507 N.E.2d at 1228.

In a strict liability case a directed verdict or judgment notwithstanding the verdict should not be entered unless all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513.) Nor should a new trial be granted unless the jury's verdict is contrary to the manifest weight of the evidence. (*Renfro*, 155 Ill. App. 3d at 156, 507 N.E.2d at 1227.) A verdict is contrary to the manifest weight of the evidence only where, upon review of all the evidence in the light most favorable to the party who prevailed at trial, an opposite conclusion is clearly apparent or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. *Renfro*, 155 Ill. App. 3d at 156, 507 N.E.2d at 1227.

In applying these principles to the case at bar, we must first determine if it was objectively reasonable for defendant to expect the decedent to be electrocuted by the welding unit. As stated earlier, at trial plaintiff presented extensive evidence indicating that defendant was aware that a protruding screw in the insulated electrode holder handle could cause electric shock if the handle was assembled improperly. The welder's guide accompanying the AC-225-S welder contained the following paragraph:

> "Slide handle into position and secure with locking screw. When installing, turn the locking screw *in* until it is tight. The threaded end of the screw will then press against the inside of the handle and the head of the screw will be *completely inside* the handle." (Emphasis in original.)

Additionally, testimony by former employees of defendant revealed that the design of the handle changed in 1977. At that time, the screw hole was made smaller, which ostensibly reduced the chances of electric shock. As stated previously, the unit decedent was using when he died was manufactured in 1979, after the above design change occurred. Even with a smaller screw hole, however, it was still possible to assemble the electrode holder handle in such a way

as to make the screw a hazardous conductor of electricity. Plaintiff also presented evidence that further design changes were made in AC-225-S units after 1977. In 1980, defendant again changed the screw in the electrode holder handle because of the known danger of the exposed screw head. Furthermore, defendant affixed the following warning to the electrode holder handle of the AC-225-S welder after July 1980:

"Warning—electric shock can be fatal; before turning on welder check the electrode holder to be sure that there are no protruding screw heads and that all insulation is secure."

Raymond Cebul, designer of the welder and former employee of defendant, testified in his evidence deposition that the information included in the above warning was common knowledge prior to April 1979.

■ After looking at the record as a whole, we conclude that it was objectively reasonable for defendant to expect the decedent to be electrocuted by the energized screw in the electrode holder handle. Accordingly, we find that defendant had a duty to warn the decedent of the danger of electric shock posed by the protruding screw. Having decided that, the question is whether defendant did adequately warn potential users of the danger of the energized screws in the electric holder handle. The only information accompanying the AC-225-S unit that can be construed as a warning is contained in the aforementioned welder's guide. There were no warning labels affixed to the unit itself about the danger of energized components. The welder's guide contained the above-mentioned instructions regarding assembly of the holder handle which stated that the handle should be assembled so that the head of the screw would be completely inside the handle. That is the extent of the information defendant provided with the unit to prevent electric shock by an energized screw. In this court's opinion, such limited and neutral instructions are not enough to constitute adequate warning of the danger to potential users of the unit. Defendant knew or should have known of the possibility of misassembly of that holder handle and that the consequences of such misassembly could be deadly.

Given this court's conclusion that defendant had a duty to warn decedent of the danger of electrical shock, we approach this record on the adequacy of warning not as a second jury (*Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 423 N.E.2d 503) but with the question whether the jury's verdict is against the manifest weight of the evidence. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.) Based on our review of the record concerning the warning, we conclude that the jury's verdict was against the manifest weight of the evidence. As noted above, warning

of this foreseeable danger, electric shock by an energized screw, was virtually nonexistent. Accordingly, we hold this verdict was against the manifest weight of the evidence, and plaintiff is therefore entitled to a new trial. *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.

For the foregoing reasons, the judgment of the circuit court of White County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

WELCH, J., concurs.

JUSTICE CHAPMAN, dissenting:

I agree with the majority that the question of whether there is a duty to warn is one of law, and I also agree that these facts imposed a duty to warn. The question of whether that duty has been breached is, however, one of fact. (*Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561.) When we consider whether the duty has been breached, we are really considering the adequacy of the warning. The majority concludes:

> "In this court's opinion, such limited and neutral instructions are not enough to constitute adequate warning of the danger to potential users of the unit." (258 Ill. App. 3d at 847.)

While I might agree with the majority's conclusion, the jury did not. Although the majority states that it "approach[es] this record on the adequacy of warning not as a second jury" (258 Ill. App. 3d at 847), its earlier conclusion of inadequacy belies this statement.

Therefore, I respectfully dissent.