(Nos. 91284, 91378 cons

KATHLEEN M. SOLLAMI *et al.*, Appellees, v. LAWRENCE EATON *et al.*, Appellants.

*Opinion filed June 6, 2002.*

James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellant Lawrence Eaton.

Stephen J. Maassen, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellant Jumpking, Inc.

John Womick and Ralph R. Bloodworth III, of Womick Law Firm, Chtrd., of Carbondale, for appellees.

JUSTICE GARMAN delivered the opinion of the court:

In May 1997, plaintiff Kathleen Sollami, then 15 years old, injured herself while jumping on a large recreational trampoline located on premises owned by defendant Lawrence Eaton and manufactured by defendant Icon Health and Fitness, Inc., doing business as Jumpking (hereafter, Jumpking). Her father, Phillip Sollami, sued on her behalf. The circuit court of Williamson County entered summary judgment for both defendants. The appellate court reversed and remanded (319 Ill. App.

3d 612), and we granted leave to appeal (177 Ill. 2d R. 315). We now reverse the appellate court and affirm the judgment of the circuit court.

## BACKGROUND

The facts of this case are not in dispute and may be briefly summarized. Kathleen was acquainted with Lawrence Eaton's daughter. Kathleen went to Eaton's house on the day in question to see her friend. Another friend arrived. The girls called two boys to come over. At one point, all five of the children were jumping at the same time on the Eatons' trampoline, which was located in the side yard. The trampoline was described as a " 'Backyard Round 14' diameter trampoline.' " 319 Ill. App. 3d at 614. Neither Lawrence Eaton nor his wife were home at the time. The group decided to do "rocket" jumps, in which one jumper is propelled higher than the other jumpers. Completing a rocket jump requires three or four persons to jump simultaneously on the perimeter of the trampoline mat, while one person jumps to the center and is thereby propelled higher than the other jumpers. After watching one of her friends successfully complete a rocket jump, Kathleen took a turn at being the "rocket". As she landed on the trampoline mat, Kathleen felt her knee pop. 319 Ill. App. 3d at 614.

Lawrence Eaton had purchased the trampoline in 1992 and assembled it according to written instructions provided by Jumpking. Pursuant to those instructions, Eaton affixed decals to the trampoline mat and frame warning that the trampoline should be used only by properly trained participants with direct supervision of a qualified instructor. Eaton also attached an instruction placard to the frame with a wire tie. During the spring prior to Kathleen's injury, Eaton found the placard on the ground and did not reattach it. 319 Ill. App. 3d at 616.

Count I of plaintiffs' third amended complaint al-

leged, as to Eaton, that Kathleen was an invited guest on premises owned and controlled by Eaton and was injured while jumping on a trampoline located on said premises. Plaintiffs alleged that Eaton was negligent in (1) failing to warn Kathleen of the dangers associated with more than one person jumping on the trampoline simultaneously in that he failed to replace the warning placard provided by Jumpking on the trampoline prior to the date of Kathleen's injury, (2) permitting more than one person to use the trampoline at one time, and (3) failing to supervise the activity of minors on his premises to verify that only one person used the trampoline at a time. Count III of the complaint, as to Jumpking, alleged that the trampoline contained one or more manufacturing or design defects which rendered it not reasonably safe for its intended use. It was alleged that Jumpking (1) permitted the trampoline, which was designed as a training device, to be used as a backyard toy, (2) failed to warn persons, including Kathleen, that only one person was permitted to use the trampoline at a time, (3) failed to verify that when the trampoline was sold, its instructions as to use were attached to the trampoline and could not be removed, and (4) failed to adequately warn persons, including Kathleen and Eaton, that the trampoline should be used only under the direct supervision of a qualified instructor recommended by the United States Gymnastics Federation.

In its motion for summary judgment, Jumpking alleged that the danger of jumping on a trampoline is open and obvious and should be appreciated by a reasonable 15-year-old person. Thus, as a matter of law, Jumpking had no duty to warn. Eaton's motion for summary judgment made similar allegations. The circuit court granted the motions, finding that it was bound by the decision of the Fourth District of the appellate court in *Ford v. Nairn*, 307 Ill. App. 3d 296 (1999), which the circuit court found virtually indistinguishable from the instant case.

In reversing the circuit court, the appellate court focused on the instructions and warnings given in the literature accompanying the trampoline. The court found that such extensive instructions and warnings demonstrated knowledge on Jumpking's part that was superior to that of purchasers and users of the trampoline regarding its characteristics and the risk of harm to consumers who purchase a trampoline for use as a backyard toy. The court stated:

"Though certain recognized hazards associated with trampoline jumping may be considered open and obvious depending on the circumstances, we doubt that recreational users appreciate the hazards and the risk of injury posed by the thrust capacity of the trampoline mat and appreciate that the risk and severity of the injury is reduced when the user is instructed on fundamental landing techniques to manage that impact. The instructions and warnings demonstrate that the consequences of encountering these hazards are not obvious and are not appreciated or understood by foreseeable purchasers and users." 319 Ill. App. 3d at 619.

The court concluded that Jumpking had a duty to warn because of its superior knowledge of the hazards and risks of harm that its trampoline posed to foreseeable users. 319 Ill. App. 3d at 620.

The court also concluded that Eaton had a duty to warn Kathleen of the dangers of jumping on his trampoline, based upon his superior knowledge of the warnings and instructions supplied by Jumpking with the trampoline. 319 Ill. App. 3d at 620.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS

5/2—1005(c) (West 2000); *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31 (1999). Our review of the circuit court's judgment is *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

## II. Duty to Warn in Product Liability Cases

To recover in a product liability action, a plaintiff must plead and prove that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 540 (1996); *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 343 (1994). A product may be found unreasonably dangerous by virtue of a physical flaw, a design defect, or a failure of the manufacturer to warn of the danger or instruct on the proper use of the product as to which the average consumer would not be aware. *Renfro v. Allied Industrial Equipment Corp.*, 155 Ill. App. 3d 140, 155 (1987). A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning. *Goldman v. Walco Tool & Engineering Co.*, 243 Ill. App. 3d 981, 992 (1993); *Smith v. American Motors Sales Corp.*, 215 Ill. App. 3d 951, 957 (1991). No duty to warn exists where the danger is apparent or open and obvious. *Ford*, 307 Ill. App. 3d at 300. The duty to warn is determined by an objective analysis, *i.e.*, the awareness of an ordinary person. *Klen v. Asahi Pool, Inc.*, 268 Ill. App. 3d 1031, 1035 (1994). The determination of whether a duty to warn exists is a question of law. *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 887 (1999); *Bell v. Lincoln Electric Co.*, 258 Ill. App. 3d 842, 846 (1994).

The circuit court in this case relied on *Ford*, a Fourth

District case with an almost identical factual situation. There, a 14-year-old girl injured herself on a backyard trampoline manufactured by Jumpking. The injury occurred while the plaintiff and some friends were "double-jumping," an activity designed to make one jumper go higher, similar to the "rocket" jump performed by Kathleen and her friends in the instant case. The plaintiff injured her knee when she contacted the trampoline mat. The owner of the trampoline received a user's manual, warning decals, and a warning placard with the trampoline. *Ford*, 307 Ill. App. 3d at 299. The plaintiff sued Jumpking and the premises owner. The appellate court affirmed the circuit court's grant of summary judgment to defendants, finding that the dangers involved in using a recreational trampoline are analogous to the dangers associated with falling from a height. Such dangers are open and obvious to teenagers and adults. The court also stated that "[r]isks associated with double jumping, such as collisions or increased impact from someone else in addition to oneself applying pressure to the trampoline mat, are also open and obvious. The increased impact and the ability to jump even higher is exactly what attracts jumpers to engage in double jumping and is what attracted [the plaintiff] in this case." *Ford*, 307 Ill. App. 3d at 302.

Plaintiffs argue that the open and obvious risk principle has been inconsistently applied and should be abandoned. As an example, they assert that the *Ford* case is contradictory to a previous Fourth District decision in *Johnson v. Decatur Park District*, 301 Ill. App. 3d 798 (1998). However, *Johnson* involved the use of a mini-trampoline, which is a small, round trampoline set at an angle and used as a rebound device. It provides the gymnast with greater height in performing somersaults and other gymnastic maneuvers. *AMF, Inc. v. Victor J. Andrew High School*, 172 Ill. App. 3d 337, 338 (1988).

The plaintiff in *Johnson* was injured when, in attempting to perform a front flip, he fell on his head and shoulders, breaking his neck. *Johnson*, 301 Ill. App. 3d at 800. *Ford* distinguished the *Johnson* case on the basis that there were significant physical differences between the mini-trampoline and the type of round recreational trampoline involved in *Ford*, and in the different functions of the two trampolines. *Ford*, 307 Ill. App. 3d at 301. *Johnson* is thus distinguishable from *Ford*.

Plaintiffs cite two other cases that they contend demonstrate that there is a "problem" with application of the open and obvious danger rule. They argue that these cases, both from the First District, inconsistently applied the rule. However, upon closer review, it is clear that the cases are not inconsistent. In *Venus v. O'Hara*, 127 Ill. App. 3d 19 (1984), the plaintiffs filed a negligence action against an exterminator for damages caused by his use of naphthalene flakes in the plaintiffs' home. The exterminator filed a third-party action in strict liability against bulk distributors of the flakes, alleging a failure to adequately warn of the dangerous propensities of the flakes. The circuit court granted summary judgment to the distributors on the ground that the distributors had no control over the warnings or labels placed on the containers by their purchasers. *Venus*, 127 Ill. App. 3d at 23. The appellate court reversed, holding that a supplier has a duty to supply adequate warnings to its immediate vendee and may be held liable to the ultimate user for failure to do so. The court rejected the distributors' contention that they had a right to rely on their vendees to provide adequate warnings, noting that nothing in the record suggested that the distributors were justified in relying on the expertise of subsequent distributors or that the dangerous propensities of naphthalene are so commonly known as to obviate the need for warnings. *Venus*, 127 Ill. App. 3d at 27.

In contrast, the record in *Jackson v. Reliable Paste & Chemical Co.*, 136 Ill. App. 3d 766 (1985), demonstrated such knowledge as to the dangerous propensities of methanol. In *Jackson*, plaintiffs filed suit asserting negligence and strict liability against Reliable, maker of shellac solvent that contained methanol. Reliable purchased the methanol from three suppliers. Reliable sued two suppliers for indemnification on the basis that they were strictly liable for their failure to warn Reliable of the dangerous explosive and flammable propensities of methanol. The suppliers alleged that they had no duty to warn because Reliable was fully aware of the dangerous propensities of methanol. The circuit court entered summary judgment in favor of the suppliers. *Jackson*, 136 Ill. App. 3d at 767. The appellate court affirmed, noting that the record showed that Reliable took special safety precautions in pumping the methanol from tanker trucks into its storage tanks, attaching the hose to its grounding lines to eliminate the possibility of static electricity or sparks. Reliable also packaged the methanol in a building constructed with explosion-proof electrical wiring. In addition, Reliable's president was very familiar with the flammable and explosive properties of methanol. Accordingly, the appellate court held that the suppliers had no duty to warn Reliable regarding dangers of which it was already aware. *Jackson*, 136 Ill. App. 3d at 771-72.

It is settled law that a manufacturer has no duty to warn of "those inherent propensities of a product which are obvious to all who come in contact with the product." *McColgan v. Environmental Control Systems, Inc.*, 212 Ill. App. 3d 696, 700 (1991). We see no reason to depart from this rule.

We now address application of the rule in the instant case. The appellate court quoted extensively from the user's manual that came with the trampoline. The court focused on the various warnings and instructions for use

given in the manual. It noted that, as no reference was made to these warnings and instructions by the *Ford* court, those materials were either not provided to that court or not considered by it. The appellate court in this case used the instructions and warnings to conclude that the risk of injury posed by the thrust capacity of the trampoline mat is not obvious and appreciated by foreseeable purchasers and users. 319 Ill. App. 3d at 619. The court stated that, based upon the record, Jumpking had a duty to warn "because it had superior knowledge of the hazards and the risks of harm that its product posed to foreseeable users. Because Jumpking had superior knowledge, it had a duty to warn purchasers and users of the hazards and the risk of harm that they may encounter while using its product." 319 Ill. App. 3d at 620.

Initially, we note that the appellate court is incorrect in stating that the *Ford* court did not refer to the user's manual supplied with the trampoline in that case. That court specifically referred to instructions in the manual stating that no more than one person should be allowed on the trampoline at a time and noted that the warning placard stated that two or more persons jumping on the trampoline at one time create additional risks of injury due to collisions, being bounced off the trampoline, and unexpected responses of the trampoline mat. *Ford*, 307 Ill. App. 3d at 300. The appellate court in the instant case used Jumpking's warnings and instructions in the user manual and on the warning decals and placard to bootstrap a duty to warn. No duty to warn arises where the risk of harm is apparent to the foreseeable user, regardless of any superior knowledge on the part of the manufacturer.

There is a dearth of Illinois cases on the issue of the open and obvious dangers of jumping on a recreational trampoline. One case, *Fallon v. Indian Trail School, Ad-*

*dison Township School District No. 4*, 148 Ill. App. 3d 931 (1986), involved the question of whether a trampoline was a dangerous instrumentality and whether its use was an ultrahazardous activity. The plaintiff had been attempting to perform a "front drop" maneuver on the trampoline at the time of her injury. The appellate court upheld the circuit court's determination that the trampoline was not a dangerous instrumentality and that its normal use was not an ultrahazardous activity. *Fallon*, 148 Ill. App. 3d at 934.

Cases from other jurisdictions are of limited assistance as many of them involved plaintiffs who were experienced trampoline users and who therefore appreciated the risks. In these cases, the court found no duty to warn. Although *Liccione v. Gearing*, 252 A.D.2d 956, 675 N.Y.S.2d 728 (1998), involved double-jumping on a recreational trampoline, the court's decision finding no duty to warn was based upon the plaintiff's failure to raise a triable issue of fact as to whether double-jumping is unique and created a dangerous condition different from the usual dangers inherent in jumping on a trampoline. The court also found that the plaintiff was of sufficient age, education and experience to assume the risks of jumping on a trampoline. In addition, the court found that the manufacturer's warnings were adequate as a matter of law. *Liccione*, 252 A.D.2d at 956-57, 675 N.Y.S.2d at 729.

In *Anderson v. Weslo, Inc.*, 79 Wash. App. 829, 835, 906 P.2d 336, 339 (1995), the plaintiff injured himself while attempting to perform a double flip on a neighbor's backyard trampoline. The plaintiff was a very experienced trampoline user and was aware of previous accidents. The court of appeals used a subjective test in finding that the landowners could reasonably expect that the plaintiff would realize the danger.

*Burchinal v. Gregory*, 41 Colo. App. 490, 586 P.2d

1012 (1978), involved a plaintiff who was injured while attempting a backflip on a recreational trampoline. The plaintiff had experience using trampolines at school and was aware of the dangers involved. He had successfully performed the backflip several times prior to his injury. He sued the owners of the trampoline, alleging a duty to warn and supervise. The court held that the owners had no duty to warn the plaintiff of dangers that he already understood and appreciated. *Burchinal*, 41 Colo. App. at 491-92, 586 P.2d at 1013.

In *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422 (S.D.N.Y 1999), the plaintiff was injured when he was propelled off the trampoline onto the ground. At the time of the injury, the plaintiff was jumping up and down on his feet, without turning his body in any way. He was alone on the trampoline and was propelled off the trampoline when he got off-center on the trampoline mat. The district court denied the defendants' motion to dismiss, finding it to be a question of fact as to whether the risks attendant to bouncing off-center on a trampoline were open and obvious. *Anderson*, 76 F. Supp. 2d at 448. The district court noted that the affidavit of the plaintiff's expert, together with other materials, raised a triable issue of fact as to whether the need to jump only in the center of the trampoline mat and the ease of being propelled off the trampoline and being injured, are obvious to the average person with little or no trampoline experience. *Anderson*, 76 F. Supp. 2d at 446.

Although the court in *Bryant v. Adams*, 116 N.C. App. 448, 465-66, 448 S.E.2d 832, 841-42 (1994), found that a question of fact existed as to whether the risks of jumping on a trampoline are open and obvious dangers, that decision was based upon an affidavit of a trampoline instructor who stated that the dangers were not apparent to children or adults in the absence of instruction from a qualified instructor.

The purpose of double-jumping or rocket-jumping is to propel one jumper higher than the others. It is apparent that when one is propelled higher than normal on a trampoline, contact with the trampoline mat when coming down from the greater height will cause a considerable impact to the jumper's legs. The danger of falling from a height has been held by this court to be open and obvious to any child old enough to be allowed at large. *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 327 (1978), quoting Restatement of Torts § 339, Comment *j*, at 203 (1965); *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 118 (1995). In addition, we consider it to be apparent that a trampoline mat may react differently and that injury may occur when two or more jumpers are jumping on it, as opposed to a single jumper. When, as here, three people jump down on the perimeter of the trampoline mat, other portions of the mat will tend to go up, as happened in this case and the *Ford* case. We note that Kathleen was not attempting to do a front or backflip or any other unusual maneuver on the trampoline. She merely jumped into the middle of the trampoline mat and injured her knee.

In Illinois, as we have stated, the duty to warn is determined by an objective analysis. We conclude that a reasonable 15-year-old teenager would appreciate the danger of rocket-jumping on a recreational trampoline. Accordingly, Jumpking had no duty to warn Kathleen of these dangers. In light of our conclusion, we need not address the question of the adequacy of the warnings provided by Jumpking.

### III. Duty to Warn in Premises Liability Cases

In their complaint, plaintiffs alleged, *inter alia*, that Eaton was negligent in failing to warn Kathleen of the dangers associated with more than one person jumping on the trampoline. The appellate court found based on its conclusion that the risk attendant to rocket-jumping

was not open and obvious, that summary judgment in Eaton's favor was erroneously granted. 319 Ill. App. 3d at 620.

The duty owed by Eaton to Kathleen is one of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them. 740 ILCS 130/2 (West 1994); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 147 (1990). According to section 343A of the Restatement (Second) of Torts, cited with approval in *Ward*, 136 Ill. 2d at 151, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965). For example, reason to expect harm from a known or obvious danger may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A(1), Comment *f*, at 220 (1965). The former example set forth in the Restatement has come to be known as the "distraction exception" to the obvious risk principle and the latter example is known as the "deliberate encounter exception." *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 639 (2000). Accordingly, the existence of an open and obvious condition is not a *per se* bar to a finding of legal duty on the part of a premises owner or occupier. See *Ward*, 136 Ill. 2d at 145; *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 449 (1996). Thus, whether a possessor of land should guard against harm

to the invitee, despite the obviousness of the danger, depends upon whether either the "distraction exception" or the "deliberate encounter exception" applies in a given case. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 391 (1998).

The distraction exception is illustrated in the *Ward* case. There, the plaintiff walked into a concrete post located just outside a customer entrance to a store. At the time of his injury, the plaintiff had exited the store carrying a large mirror he had purchased and he failed to see the post. Plaintiff filed a negligence action against defendant based upon a theory of premises liability. This court noted section 343A of the Restatement (Second) of Torts and found that, despite the fact that the concrete post was an open and obvious condition, it was reasonably foreseeable to the store owner that customers might momentarily forget the post's presence when exiting the store or might become distracted while carrying large, bulky items purchased in the store. *Ward*, 136 Ill. 2d at 153.

In the instant case, no evidence presented to the circuit court tends to show that Kathleen was distracted while jumping on the trampoline. Thus, we conclude that this exception does not apply here.

The deliberate encounter exception has most often been applied in cases involving some economic compulsion. See *LaFever*, 185 Ill. 2d at 392 (defendant could have reasonably foreseen that plaintiff would deliberately walk on slippery edge trim in course of performing his job duties); *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 155-56 (1992) (it was reasonably foreseeable that construction workers would use the shortest path to door of building on work site, even though the path was snow-covered and slippery). Although we do not hold that the deliberate encounter exception is applicable only in the kind of situations involved in *LaFever* and *Ralls*, we find the exception is inapplicable to this case. Here,

there is no indication of any compulsion or impetus under which a reasonable person in Kathleen's position would have disregarded the obvious risk of rocket-jumping on the trampoline.

Determining that the open and obvious doctrine applies does not end the inquiry regarding duty in a negligence case. In determining whether a duty exists, a court should consider the following factors: (1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against injury places on the defendant, and (4) the consequences of placing that burden on the defendant. *LaFever*, 185 Ill. 2d at 389; *Bucheleres*, 171 Ill. 2d at 456.

With respect to the reasonable foreseeability factor, the law does not impose a duty to warn of open and obvious conditions unless one of the two exceptions discussed above is found. *Bucheleres*, 171 Ill. 2d at 457. As to the reasonable likelihood of injury factor, we note that the law generally considers the likelihood of injury slight when the condition in issue is open and obvious, because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks. *Bucheleres*, 171 Ill. 2d at 456. Thus, because the risks involved in the instant case are open and obvious to a reasonable person in Kathleen's position, the likelihood of injury factor carries little weight. We also find that the last two factors—the magnitude of the burden of imposing the duty and the consequences of such a burden—do not favor imposing a duty on Eaton. The mere fact that Eaton may be aware that teenagers such as Kathleen use his trampoline and may injure themselves while performing inappropriate maneuvers, such as rocket-jumping, does not translate into a legal duty to provide warnings or supervision or to prevent use of the trampoline altogether. See *Bucheleres*, 171 Ill.

2d 457-58. Moreover, such burdens are unjustified, given the open and obvious nature of the risk involved in this case. We conclude that no legal duty should be imposed on Eaton.

## CONCLUSION

In summary, we conclude that the risks of trampoline usage involved in this case are open and obvious and that neither of the recognized exceptions to the open and obvious doctrine is applicable. We further conclude that Eaton had no duty to warn Kathleen of the risks involved. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE HARRISON, dissenting:

I agree with the appellate court that the circuit court committed reversible error when it entered summary judgment in favor of defendants. The purpose of a summary judgment proceeding is not to try an issue of fact, but to determine whether any genuine issue of material fact exists. *Happel v. Wal-Mart Stores*, 199 Ill. 2d 179, 186 (2002). Because summary judgment is a drastic means of disposing of litigation, the court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party. Summary judgment should not be allowed unless the moving party's right to judgment is clear and free from doubt. Accordingly, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue should be decided by the trier of fact. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423-24 (1998).

My colleagues' analysis overturns the appellate court and deprives plaintiffs of the right to have their claims

decided by a jury on the theory that the issue before the court presents a question of law. I disagree. Plaintiffs' claim against Jumpking is based on products liability. In a products liability case, the determination of whether a product is defective, and therefore unreasonably dangerous, is ordinarily a question of fact for the jury. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344 (1994).

The failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort. In such cases, the product is considered to be defective and unreasonably dangerous, not because of some defect inherent in the product itself, but because of the absence of an adequate warning accompanying the product. *Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 29-30 (1980). This is the type of products liability claim plaintiffs are asserting against Jumpking.

Just as the issue of whether a product is defective presents a question of fact for the jury, so too does the issue of whether a product was in an unreasonably dangerous or defective condition because of the failure to give adequate warnings. See *Collins v. Sunnyside Corp.*, 146 Ill. App. 3d 78, 80-81 (1986). Whether the warnings given were adequate is likewise a question for the jury in most instances. *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 221 (1980). A jury may determine that warnings are not adequate if those warnings: (1) do not specify the risk presented by the product; (2) are inconsistent with how a product would be used; (3) do not provide the reason for the warnings; or (4) do not reach foreseeable users. See *Pell v. Victor J. Andrew High School*, 123 Ill. App. 3d 423, 428 (1984).

The purpose of a warning is to apprise a person of a danger of which he is not aware, and thus enable the person to protect himself against it. When a danger is fully obvious and generally appreciated, a warning adds nothing of value. *Collins v. Sunnyside Corp.*, 146 Ill. App.

3d at 81. Accordingly, there is no duty to warn where the product is not defectively manufactured and where the possibility of injury results from a common propensity of the product which is open and obvious. *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 467 (1976).

My colleagues hold that the risks attendant to use of the Jumpking trampoline should have been open and obvious to a person in Kathleen's position. They have overlooked, however, that the issue is not for them to resolve. Whether a condition presents an open and obvious danger is a question of fact for the trier of fact. See *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38, 43-44 (2002); *Pullia v. Builders Square, Inc.*, 265 Ill. App. 3d 933, 939 (1994); see also *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 27 (1992).

There are sound reasons for this rule. A danger is open and obvious only where "both the condition and the risk are apparent to and would be appreciated by a reasonable person in the plaintiff's position exercising ordinary perception, intelligence, and judgment." (Emphasis omitted.) *Simmons*, 329 Ill. App. 3d at 43-44. Where the product at issue is one whose use by children is reasonably foreseeable, and Jumpking trampolines certainly fall within that category, the determination of what is open and obvious must be made from the point of view of a child, rather than an adult. Accordingly, the pertinent inquiry here is whether it should have been obvious to a reasonable 15-year-old girl, exercising the ordinary perception, intelligence and judgment of someone her age, that "rocket" jumping on a backyard trampoline could result in the type of knee injuries that Kathleen sustained. See *Klen v. Asahi Pool, Inc.*, 268 Ill. App. 3d 1031, 1039-40 (1994).

This court (average age, approximately 61; predominant sex, male; trampoline experience, negligible) is ill-

equipped to assess what 15-year-old girls know or should know about trampoline gymnastics, potential knee injuries, or any other topic. That is why the law has made assessments such as this the jury's responsibility and not ours.

There is no merit to the majority's efforts to sidestep these considerations by analogizing this case to situations where a person has disregarded the danger of falling from heights. Being up high does not, in itself, constitute an open and obvious danger for tort liability purposes. Seven thousand feet above sea level is a considerable elevation, for example, but how one assesses the danger of being there depends on whether one is sitting on the front porch of a log cabin in the Rocky Mountains or jumping from a light plane with a parachute strapped to one's back. Context, in other words, is everything.

Consider the surrounding circumstances here. This is not a case where a child old enough to be at large failed to appreciate the risks attendant to climbing a neighbor's tree or walking too near an open stairwell or edging too close to a steep cliff. This case involves the use of a recreational device whose very purpose was to enable individuals to go up high and come down again safely and for fun.

Kathleen used the trampoline for its intended purpose, and she did so in a straightforward way. No acrobatics were involved. In the majority's words, "Kathleen was not attempting to do a front or backflip or any other unusual maneuver ***. She merely jumped into the middle of the trampoline mat and injured her knee." 201 Ill. 2d at 14.

Certainly, any reasonable person in Kathleen's position would have realized that rocket-jumping would propel her higher than if she jumped alone. That was the whole point of doing it. There can also be no question

that a reasonable person of Kathleen's age would know that she risked serious injury if she fell off the trampoline or hit another jumper while performing rocket jumps. Such risks would be obvious to anyone mature enough to perform the maneuver.

Kathleen, however, did not fall off. She stayed on the mat perfectly well. Nor did she strike another jumper. The problem she had was in failing to appreciate that neither the normal "give" in the trampoline mat nor the strength in her knee were sufficient to counteract the additional stress on landing that resulted from the higher altitude she was able to attain through rocket-jumping. This was a qualitatively different and more subtle type of danger than the kind attendant to improper stunts, or striking another jumper or falling off the device. While that risk may be obvious to a Jumpking engineer or to an experienced instructor, my colleagues have no basis, other than their subjective beliefs, for holding that it should have been apparent to a casual teenage user such as Kathleen.

Because there is no basis for holding, as a matter of law, that the danger which befell Kathleen should have been open and obvious to a reasonable 15-year-old girl, exercising the ordinary perception, intelligence and judgment of someone that age, the appellate court was correct in reversing the entry of summary judgment on the products liability count against Jumpking. For the same reason, the court was also correct in reversing summary judgment on the premises liability claim against Eaton. If the danger was not open and obvious for purposes of evaluating a manufacturer's duty to warn in a products liability case, it was not open and obvious for purposes of assessing a landowner's liability.

I note, moreover, that I am somewhat startled by the majority's suggestion (201 Ill. 2d at 17-18) that requiring Eaton to have supervised activity on the trampoline at

his house would have subjected him to an unjustifiable burden. If a parent buys and installs a recreational device as obviously dangerous to children as the majority depicts Jumpking trampolines as being, I would have thought that parental supervision would be the least the law should require. As the risk of serious injury to children increases, the obligation for parents to provide supervision should go up, not down. The majority's approach, however, would yield the opposite result. As they would have it, the more blatantly hazardous the activity parents have provided for their children and their children's friends, the more inattentive the parents are entitled to be.

All too often, this court has taken the view that children should exercise a higher degree of judgment than adults or corporations. See, *e.g., Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995) (six-year-old boy who suffered permanent brain damage after falling into swimming pool held to higher standard of care than multimillion-dollar telephone company); *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252 (1999) (teenage French exchange student fatally injured as a result of defendants' illegally parked truck held to higher standard of care than multinational corporation). As applied by the majority in the case before us today, the "open and obvious danger" doctrine perpetuates this bizarre approach. Jumpking, the corporation, and Eaton, the adult property owner, have been exonerated without regard to how lax they may have been. Only the teenage girl is held accountable for her actions.

Such a result is fundamentally incompatible with the principles of comparative fault we have adopted in Illinois. Now that we have a comparative fault system, the open and obvious danger rule makes no more sense that the old defenses of contributory negligence and assump-

tion of risk, which we have jettisoned. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 464 (1996) (Harrison, J., dissenting). Accordingly, even if Kathleen should have known better than to rocket jump on Eaton's Jumpking trampoline, that fact should not bar her right to seek recovery from either Jumpking or Eaton. Rather, it should merely be an element for the jury to consider when apportioning fault between the parties.

For the foregoing reasons, I dissent.

JUSTICE KILBRIDE, also dissenting:

I agree with Chief Justice Harrison that the majority errs by reversing the appellate court and affirming the trial court in this case. The trial court improperly entered summary judgment in favor of each defendant. I write separately to put forth additional rationale for my disagreement with the majority's decision.

As to the claims against the manufacturer, the appellate court properly reviewed the warnings contained in the decals to be affixed to the trampoline by the purchaser during assembly and the warnings and other information about the proper use of the trampoline contained in the user's manual. The appellate court then correctly concluded that these instructions and warnings demonstrate that the manufacturer possessed knowledge superior to the purchasers and users about the characteristics of its product and the risks of harm to ordinary consumers who purchased the trampoline as a backyard toy. 319 Ill. App. 3d at 619.

The majority acknowledges the proposition that a manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning. 210 Ill. 2d at 7. Nonetheless, the majority holds no duty to warn arises where the risk of harm is apparent to the

foreseeable user, regardless of any superior knowledge on the part of the manufacturer. 210 Ill. 2d at 17-18.

If the "risk of harm" from trampoline use were considered to be limited to the danger of falling from a height, we would certainly be bound by our precedent in *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 327 (1978), and would correctly hold that such a danger is open and obvious, even to a 15-year-old. That is not the case here. As plaintiffs argued, the specific risk of harm at issue here, the likelihood of significant impact to a user's knees resulting from the increased thrust capacity of the mat when more than one person is jumping at a time, is not so apparent, particularly to an inexperienced teenager, as to be "open and obvious" as a matter of law. A jury should decide this issue.

The adequacy of the warning given by the manufacturer similarly presents a jury question. Although the decals warned of the danger of unsupervised use and the user's manual discussed some of the responsibilities of both users and instructors, only the placard contained any warning of the risks of double-jumping. The placard, originally wired to the trampoline by the purchaser, had fallen off and was not reattached. It contained the following warning:

> "Permit only one performer at a time on the trampoline. Two (2) or more performers create additional risks of injury due to collisions, being bounced off the trampoline and unexpected responses by the trampoline mat."

Warnings must be adequate to perform their intended function of risk reduction. See *Pell v. Victor J. Andrew High School*, 123 Ill. App. 3d 423, 428 (1984), citing *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 221 (1980). Even if the warning on the placard had reached the minor plaintiff in this case, its vague reference to "unexpected responses by the trampoline mat" may not have alerted her to the specific danger posed by those re-

sponses. The adequacy of the warning in this case is, therefore, a jury question.

Similarly, I believe the questions of whether a duty to warn on the part of the property owner exists, as well as the adequacy of any warnings given, are also issues that should be determined by a jury. Of particular relevance to these questions is the following instruction contained in the users manual: "USE OF A TRAMPOLINE SHOULD ALWAYS BE UNDER THE DIRECT SUPERVISION OF A QUALIFIED INSTRUCTOR." It could be determined that the property owner should have not permitted the unsupervised use of the trampoline. Further, since the detached placard was the only source warning of the specific risks associated with injury at issue here, a jury could conclude that the property owner utterly disregarded the duty to warn in this case.

For these reasons, I respectfully dissent.