In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1870

LARRY D. DUNN,

*Plaintiff-Appellant,*

*v.*

MENARD, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-4552 — **Sara L. Ellis**, *Judge.*

ARGUED JANUARY 17, 2018 — DECIDED JANUARY 29, 2018

Before FLAUM, EASTERBROOK, and BARRETT, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff-appellant Larry Dunn filed
a negligence suit against defendant-appellee Menard, Inc.
("Menards") after he was injured by a falling stack of rolled
insulation at a Menards store in Hodgkins, Illinois. The dis-
trict court granted summary judgment to Menards, finding
that it did not owe plaintiff a legal duty because: (1) the stack
of insulation constituted an "open and obvious" danger; and
(2) imposing such a duty would be excessively onerous under

the circumstances. Plaintiff now appeals the district court's ruling. We affirm.

## I. Background

### A. Factual Background

Menards is a chain of home improvement centers located in the Midwestern United States. At approximately 7:00 PM on January 3, 2014, plaintiff Larry Dunn and his adult son, Erik Dunn, visited a Menards in Hodgkins, Illinois to purchase rolled insulation. This was not the first time plaintiff had frequented the Hodgkins Menards; he went to the store on a monthly basis to purchase personal home improvement supplies.

After plaintiff paid for twenty-one rolls of insulation inside the main store, a cashier instructed him to pick up his merchandise in one of the store's surrounding self-service warehouses, where customers loaded their purchased materials. Plaintiff drove his Dodge Grand Caravan to the Menards "yard," and a security guard directed him to the warehouse containing insulation.

Both entrances to the insulation warehouse displayed warning signs stating, "For your safety, caution, do not cut bandings, do not open packages, do not pull, do not climb, and if you need assistance, please call." Although neither plaintiff nor Erik recall seeing the warning signs, they do not dispute that they were posted on the date of the incident.

Plaintiff did not observe any Menards employees inside the warehouse. However, he had witnessed employees assist customers in the self-service warehouses in the past, and understood he could ask for assistance if needed.

Plaintiff parked his van next to the supply of rolled insulation, which was organized in vertical stacks. Upon exiting his vehicle, plaintiff noticed that one stack of insulation, approximately sixteen feet in height, "was not straight" and was "leaning to the right." During his deposition, plaintiff testified that the stack "seemed too high," and that "it was pretty obvious" the stack "was leaning and unstable." As a result, plaintiff told his son to "keep an eye" on the stack.

Despite the leaning stack, plaintiff did not seek assistance from any Menards employees. Instead, he observed the insulation for approximately five minutes to determine whether "it was safe to proceed." After counting the rolls of insulation in front of the leaning stack, plaintiff concluded he could obtain the insulation he needed without utilizing the unstable batch. Plaintiff decided it was safe to proceed as long as neither he nor his son touched the leaning stack. Nevertheless, plaintiff instructed Erik to "be wary of where [he was] and what [he was] moving" and to "be cautious" and "careful" while loading.

Plaintiff and Erik proceeded to load their van with insulation for approximately ten to fifteen minutes. Plaintiff faced his van as they loaded, with the leaning stack approximately eight to ten feet behind him. The parties agree that, during this time, neither plaintiff nor Erik directly or indirectly touched the leaning stack. Still, as they loaded the final bales of insulation, the leaning stack fell. Some of the falling insulation struck plaintiff and forced him to the ground, allegedly injuring his right shoulder.

After the incident, plaintiff and Erik immediately returned to the Menards main store and notified the front office man-

ager. While preparing an incident report, the front office manager learned that two Menards employees were working in the bay next to plaintiff at the time of the accident. The employees told the front office manager that, although they did not see plaintiff enter the warehouse, they heard the insulation fall. They further told the front office manager that they were never asked for assistance.

As a general practice, the general manager of the Hodgkins Menards patrols both the store and warehouses three times by 5:00 PM in order to look for potential hazards. In addition, the yard shipping and receiving manager, the assistant yard shipping and receiving managers, and individual team members routinely monitor the self-service warehouses for potential safety issues.

## B. Procedural Background

On May 6, 2015, plaintiff filed a negligence suit against Menards in the Circuit Court of Cook County. Menards removed the case to the Northern District of Illinois, where the matter was assigned to District Judge Sara L. Ellis.

Plaintiff was deposed on September 23, 2015 and non-medical fact discovery closed on November 20, 2015. On February 22, 2016, five months after plaintiff's deposition, three months after the close of non-medical fact discovery, and four days before the deadline for Menards's summary judgment brief, plaintiff provided Menards with a supplemental 14-paragraph personal affidavit. Menards moved to strike the affidavit on the grounds that it contradicted plaintiff's prior deposition testimony. Following an in-court hearing, the district court granted Menards's motion in part and struck paragraphs 3 through 10 and 14.

The district court granted summary judgment to Menards on November 18, 2016. The court found Menards did not owe a legal duty to plaintiff because the leaning stack of insulation that fell on him constituted an open and obvious condition, and imposing such a duty would be excessively onerous under the circumstances. Plaintiff subsequently filed a motion to reconsider, which was denied. This appeal followed.

## II. Discussion

The first two issues presented in this appeal—the open and obvious nature of the leaning stack of insulation and whether Menards owed plaintiff a legal duty—are subject to de novo review. *See C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016). Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We "consider all of the evidence in the record in the light most favorable to the non-moving party, and we draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 276–77 (7th Cir. 1996).

The third issue on appeal—the district court's exclusion of portions of plaintiff's supplemental affidavit—is reviewed for an abuse of discretion. *See Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008). Under this standard of review, "the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place." *Id.* at 218 (quoting *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir. 1992)).

"Rather, the district court's decision is to be overturned only if no reasonable person would agree with the trial court's ruling." *Id.*

## A. The stack of insulation that fell on plaintiff constituted an open and obvious condition.

"[S]tate law provides the substantive law in a diversity action." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). Thus, "our task is to predict how the Illinois Supreme Court would decide the issues presented here." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). "Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.*

To establish a cause of action for negligence under Illinois law, a plaintiff must prove: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010). Here, plaintiff's arguments relate to the first element.

Whether a duty exists is a question of law to be determined by the court. *Fulk v. Ill. Cent. R. Co.*, 22 F.3d 120, 125 (7th Cir. 1994); *see also Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333 (7th Cir. 1994) (holding that the allocation of duties between judge and jury is governed by federal law). Put broadly, "[d]uty is determined by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 831 (Ill. 1996) (quoting *Ward v. K Mart*

*Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). As a matter of practical application, however, "the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Ward*, 554 N.E.2d at 226 (quoting *Mieher v. Brown*, 301 N.E.2d 307, 310 (Ill. 1973)). "The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable fore-seeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong*, 930 N.E.2d at 519; *see also LaFever v. Kemlite Co.*, 706 N.E.2d 441, 446 (Ill. 1998).

"In Illinois, the open and obvious doctrine is an exception to the general duty of care owed by a landowner." *Park v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 960 N.E.2d 764, 769 (Ill. App. Ct. 2011). This is because "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres*, 665 N.E.2d at 832; *see also Ward*, 554 N.E.2d at 230 ("Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition."). Thus, "[i]n cases involving obvious and common conditions … the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." *Bucheleres*, 665 N.E.2d at 832. "The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.*

Often, "[w]hether a dangerous condition is open and obvious may present a question of fact." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). However, "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* The district court found the latter applied here.

Plaintiff claims the district court's ruling was improper because he and his son "each had a different interpretation of the physical nature of the stack of insulation that fell." This argument, however, misstates the record. During plaintiff's deposition, he testified that he "noticed that one stack of insulation did not look stable." When asked for further details, plaintiff stated that it was "pretty obvious" that the stack was "leaning" and "not straight." In comparison, plaintiff's son testified that it was "obvious" that the stack was "uneven" and "somewhat" unstable.

Plaintiff asserts this testimony evinces "different opinions and interpretation[s]" of how the leaning stack appeared. We disagree. True, plaintiff described the stack as "leaning," while Erik testified the stack was "uneven." In our view, however, this is a semantic distinction without a meaningful difference. More importantly, both plaintiff and his son agreed the stack was "unstable," and both witnesses testified that the physical condition of the stack was "obvious." Indeed, the parties' Joint Statement of Undisputed Material Facts (the "Joint Statement") explicitly states that "[t]he uneven stacking was obvious to Erik Dunn *and* his father" and "Plaintiff *and* Erik Dunn were *both* aware of the obvious condition of the

stack" (emphases added). These accounts are sufficiently con-
sistent to make application of the open and obvious doctrine
a question of law.[1]

Moving on, "'[o]bvious' means that 'both the condition
and the risk are apparent to and would be recognized by a
reasonable man, in the position of the visitor, exercising ordi-
nary perception, intelligence, and judgment.'" *Bruns*, 21
N.E.3d at 690 (quoting Restatement (Second) of Torts § 343A
cmt. b, at 219 (1965)); *see also Deibert v. Bauer Bros. Constr. Co.*,
566 N.E.2d 239, 241 (Ill. 1990) (noting that Illinois has adopted
§ 343A). "Thus, the determination of whether the condition is
open and obvious depends not on plaintiff's subjective
knowledge but, rather, on the objective knowledge of a rea-
sonable person confronted with the same condition." *Racky v.
Belfor USA Grp., Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 2017). In
other words, "if a reasonable person with the plaintiff's
knowledge of the situation would have appreciated and
avoided a hazard created by the defendant's actions, then
from the defendant's perspective the plaintiff's injuries were
neither foreseeable nor likely." *Smith v. MHI Injection Molding
Mach., Inc.*, No. 10-cv-8276, 2014 WL 1516592, at *5 (N.D. Ill.
Apr. 18, 2014).

---

[1] In further support of his argument, plaintiff claims that Kyle Krause, the
Hodgkins Menards general manager, also had an inconsistent description
of the leaning stack. Plaintiff's assertion, however, is wholly unsupported
by the record. During Krause's deposition, plaintiff's own counsel
acknowledged that Krause "[did not] recall the incident or any stacks
prior to the incident." Thus, Krause did not present an account of the
physical nature of the stack at all, let alone one that conflicted with that of
plaintiff or Erik Dunn.

Here, the district court correctly determined that "the undisputed evidence allows for only one conclusion: … the leaning and unstable stack posed an open and obvious danger that a reasonable person with Dunn's knowledge would have appreciated." It is undisputed that "[p]rior to the incident, Plaintiff noticed that one stack of insulation did not look stable." Specifically, the stack "was not straight" and "was leaning to the right." The parties' Joint Statement goes so far as to say "[i]t was obvious to Plaintiff that the stack was leaning and unstable," so much so that plaintiff told his son to "be careful," "keep an eye on the stack of insulation," and "be wary of where [he was] and what [he was] moving." Presented with these circumstances, a reasonable person would have taken sufficient care to avoid the primary danger inherent in the stack's condition: that the stack might fall over.

Plaintiff devotes a significant portion of his brief to a discussion of *his own* recognition of this inherent risk. Specifically, he argues that although he observed the *condition* of the leaning stack of insulation, he did not appreciate the *risk* the condition posed. Although plaintiff's claim stems from a correct interpretation of the law, *see Racky*, 83 N.E.3d at 467 ("The open and obvious doctrine applies only where *both* the condition and the risk are apparent to and would be recognized by a reasonable person."), it is at odds with the undisputed record. Had plaintiff truly believed the leaning stack posed no danger, he would have had no reason to monitor the insulation for five minutes to determine whether "it was safe to proceed with loading the insulation in the van." Nor would he have needed to warn his son to be mindful of his surroundings.

Plaintiff counters that his apprehension applied only to a scenario where either he or his son touched the stack, and it is undisputed that neither of them made contact with the stack prior to its collapse. Once again, the evidence belies plaintiff's assertion. Plaintiff observed the leaning stack for five minutes *before* attempting to load his van. From this, it is reasonable to infer that plaintiff at least initially feared the stack might spontaneously fall, even without any additional disturbance.

Regardless, plaintiff seeks to split hairs. *See Bujnowski v. Birchland, Inc.*, 37 N.E.3d 385, 388 (Ill. App. Ct. 2015) ("[T]he test of openness and obviousness [is] not what the plaintiff actually knew at the time, but what he had reason to suspect and could have learned."). Moreover, the operative focus is not on *plaintiff* himself, but on a *reasonable person* with plaintiff's knowledge of the situation, and whether such an individual, after exercising ordinary perception, intelligence, and judgment, would have appreciated and avoided the hazard. *See Smith*, 2014 WL 1516592, at *5; *Bruns*, 21 N.E.3d at 690. Viewed from this perspective, a reasonably prudent person would not have stood underneath a sixteen-foot stack of "obvious[ly]" "unstable" insulation, even if that person ventured to avoid physical contact. Therefore, the leaning stack of insulation constituted an open and obvious condition.

Of course, we must also consider whether an exception to the open and obvious rule applies. "Exceptions to the rule make provision for cases in which 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.'" *Bruns*, 21 N.E.3d at 691 (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). "Illinois law recognizes two such exceptions" in cases involving premises

liability: "the 'distraction exception,' and the 'deliberate encounter exception.'" *Id.* (quoting *Sollami v. Eaton*, 772 N.E.2d 215, 224 (Ill. 2002)). "Where an exception to the open and obvious rule applies, the outcome of the duty analysis … is 'reversed.'" *Id.* (quoting *Belluomini v. Stratford Green Condo. Ass'n*, 805 N.E.2d 701, 705 (Ill. App. Ct. 2004)). That is, "[w]hereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury." *Id.*

Neither exception applies here. The deliberate encounter exception only applies "where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* (alteration in original) (quoting *Sollami,* 772 N.E.2d at 223). "The deliberate encounter exception has most often been applied in cases involving some economic compulsion," *Sollami*, 772 N.E.2d at 224, such as when a plaintiff "is forced to choose between facing danger and neglecting his duties" to an employer. *Atchley v. Univ. of Chi. Med. Ctr.*, 64 N.E.3d 781, 791 (Ill. App. Ct. 2016); *see also Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 648 (Ill. App. Ct. 2010) ("The deliberate-encounter exception recognizes that individuals will make deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of property."). No such compulsion is present here.

This conclusion is supported by the Illinois Appellate Court's opinion in *Kleiber*. There, the plaintiff was loading bags of topsoil into her vehicle from a pallet located outside

the front of a Farm and Fleet store. *Kleiber*, 942 N.E.2d at 642. In order to obtain the bags of topsoil, the plaintiff walked across an empty wooden pallet lying on the ground. *Id.* Plaintiff's foot went through one of the slats in the pallet and she fell, injuring her leg. *Id.* at 642–43. On appeal, the court held that, even if "there was no other way to access the topsoil except by crossing the empty pallet," the deliberate encounter exception did not apply. *Id.* at 649. According to the court, "despite the location of the topsoil, plaintiff had another option available. Plaintiff could have gone into the store and asked for assistance." *Id.* The same reasoning applies here.

The distraction exception is also inapposite. The distraction exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Bruns*, 21 N.E.3d at 691 (alteration in original) (quoting *Sollami*, 772 N.E.2d at 223). "[T]he distraction exception will only apply," however, "where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* Here, the parties' Joint Statement explicitly states that "Plaintiff did not do anything to distract himself at the time of the accident."

Admittedly, the parties agree that immediately prior to the accident, plaintiff "was facing the van where he was loading insulation" and "talking to Erik Dunn." However, "the mere fact of looking elsewhere does not constitute a distraction." *Id.* at 692 (holding that the fact a pedestrian was looking at the front door of her destination when she tripped on a sidewalk defect did not constitute a distraction). Nor do "self-created distractions" that are "solely within the plaintiff's

own creation." *Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (Ill. App. Ct. 2005).

In sum, the district court did not err when it ruled the stack of insulation that fell on plaintiff constituted an open and obvious condition under Illinois law.

### B.  Menards did not owe plaintiff a legal duty.

Plaintiff next argues Menards owed him a legal duty *even if* an open and obvious condition existed. True, "[t]he existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns*, 21 N.E.3d at 690. Rather, "[i]n assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case." *Jackson v. TLC Assocs., Inc.*, 706 N.E.2d 460, 463 (Ill. 1998).

"Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury." *Bruns*, 21 N.E.3d at 690; *see also Belluomini*, 805 N.E.2d at 707 ("[T]he open and obvious doctrine covers, in substance, the first two factors of the duty test."). "[I]f the danger is open and obvious … that means … that the first two factors favor the defendant." *Bujnowski*, 37 N.E.3d at 395. In other words, "[w]here the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 21 N.E.3d at 690. Indeed, the *Bujnowski* court noted that "[n]o published premises-liability negligence case … [has] held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty." 37 N.E.3d at 397.

"This leaves one more inquiry: do the third and fourth factors—the burden that defendant would incur, and the consequences of imposing that burden—favor plaintiff to the extent that they outweigh the first two factors and thus call for imposing a duty?" *Id.* The district court found "Menards employees already perform regular inspections of the warehouse and are available to assist customers if requested." In the court's view, imposing an additional duty to monitor the stacks of insulation "would be onerous, requiring [Menards] to expend significant resources to have employees constantly stationed in the warehouse to oversee its customers." The district court found this was particularly true here because plaintiff "did not request assistance despite recognizing the risk and knowing such an option was available." *See also Kleiber*, 942 N.E.2d at 650 (holding that imposing a burden on the defendant to monitor pallets in front of a store would be unreasonable "where the plaintiff never sought assistance from anyone in the store, despite having recognized the open and obvious danger").

We agree with the district court's reasoning. We also add that less onerous safeguards than continuous surveillance, such as building a frame to prevent tall stacks of rolled insulation from tipping over or stacking rolled insulation at lower heights, would not be justified given the open and obvious nature of the risk involved.

## C. The exclusion of plaintiff's supplemental affidavit does not warrant reversal.

Finally, plaintiff argues that the excluded portions of his supplemental affidavit create genuinely disputed issues of material fact regarding the open and obvious nature of the leaning stack of insulation.

The district court struck paragraphs 3 through 10 and 14 of plaintiff's supplemental affidavit on the grounds that they contradicted plaintiff's prior deposition testimony. "As a general rule … this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). Thus, where deposition testimony and an affidavit conflict, "the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995). In the alternative, supplemental affidavits can be employed "to clarify ambiguous or confusing deposition testimony." *Buckner*, 75 F.3d at 292.

### 1. *Paragraphs 3 through 5*

Paragraphs 3 through 5 of plaintiff's post-deposition affidavit state the following:

> 3. During [my prior visits to the Hodgkins Menards outside warehouse], I observed stacks of insulation that were both the same and similar in size as the stacks of insulation that I purchased and that fell on top of me and injured me on January 3, 2015, which were located within the warehouse both at and near the location where I was injured.

4. On all of these prior occasions, the stacks of insulation were stacked akin and leaning similarly to the way they were stacked on the day I was injured.

5. What is more, I have observed other products consistently stacked in such a manner at Defendant's MENARD store.

The district court found these paragraphs were directly contradicted by the following portion of plaintiff's deposition testimony, which involved a discussion of a photograph taken in the immediate aftermath of plaintiff's accident. The photograph depicted not only the rolled insulation that had fallen to the ground, but also other surrounding stacks that remained intact:

Q. Now, let's look at Plaintiff's Exhibit 1. Can you take a look at that photo? In the top right corner there is two bales of insulation, far right and right next to it. Do you see those?

A. Yes.

Q. And when you talked about the insulation leaning to the right, would the picture of the insulation in the right corner, is that what you were referring to, leaning into the right?

A. Similarly. It was more kind of haphazardly stacked. It wasn't as nice and neat as those are.

According to the district court, considered collectively, paragraphs 3 through 5 of plaintiff's affidavit state that "the leaning stack of insulation on the day that [plaintiff] was injured looked similar to all of the stacks … that he'd seen on

prior occasions." In contrast, plaintiff's deposition testimony suggested "that actually it was more haphazardly stacked, that it wasn't as nice and neat as it was in the photographs that he was shown."

Plaintiff argues this conclusion is misguided. In plaintiff's view, Plaintiff's Exhibit 1 (discussed during his deposition) depicted stacks of insulation that were present *on the date plaintiff was injured.* Thus, when plaintiff suggested that the stack that fell on him was "more haphazardly stacked" and not "as nice and neat" as those shown in the photograph, he was comparing the leaning stack to other stacks that were present *on the same date.* In contrast, plaintiff's affidavit compared the leaning stack to stacks he had observed *during prior visits,* which were never discussed during his deposition.

However, even assuming *arguendo* that plaintiff's technical interpretation is correct, it does not alter the summary judgment analysis. If anything, the addition of paragraphs 3 through 5 reinforces plaintiff's knowledge of the open and obvious condition prior to his accident. *See Bruns*, 21 N.E.3d at 687 (noting that, during prior visits to location of accident, the plaintiff "definitely" noticed the defect in sidewalk that later caused her to fall). The exclusion of these paragraphs, therefore, does not warrant reversal.

    *2.  Paragraphs 6 through 10*

Paragraphs 6 through 10 of plaintiff's post-deposition affidavit state the following:

> 6. At my discovery deposition on September 23, 2015, I was asked why I believed the stack of insulation fell and I responded that "… it was not stacked properly." I was then asked "how do

you know it was not stacked properly?" My response was that "[i]n my opinion it seemed to [sic] high and it was not stacked straight." I formed this opinion *after* I was injured.

7. Prior to being injured, I did not believe the stack of insulation would fall unless it was pushed or moved by someone.

8. I formed the opinion that the stack would not fall, absent being pushed or moved, because it was stacked the same as stacks of insulation that I encountered on my previous visits to MENARD and because I am a professional who is highly experienced in working with and around building materials.

9. While the stack of insulation was leaning and did not appear to be stable, I perceived no obvious risk to my son or myself because, as stated, I believed that the insulation could only fall over if, and only if, someone were to push or move the tall stack of insulation.

10. I did not recognize any obvious risk to my son or myself because I did not believe that insulation was potentially dangerous as is.

According to the district court, plaintiff's deposition testimony indicated that, contrary to his affidavit, his opinion regarding the condition of the leaning stack "was formed prior to when the stack fell on him as opposed to after."

The district court's reasoning mirrors our analysis above: the fact that plaintiff monitored the insulation for five minutes *before* attempting to load his van and warned his son to be

mindful of his surroundings serves as evidence that plaintiff formed an opinion about the condition and risk of the leaning stack *prior* to its collapse. Thus, the district court's ruling was reasonable. Therefore, the exclusion of paragraphs 6 through 10 was not erroneous.

### 3. *Paragraph 14*

Paragraph 14 of plaintiff's post-deposition affidavit states, "When the leaning stack fell on me I was distracted from looking at it because I was focused on loading insulation into the van."

The district court found these paragraphs were directly contradicted by the following portion of plaintiff's deposition testimony:

> Q. Did you do anything to distract you prior to your incident?

> A. No.

Here, the district court's decision was clearly reasonable, as plaintiff's affidavit directly contradicts his deposition testimony. The court's exclusion of paragraph 14, therefore, did not constitute an abuse of discretion.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.