In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2825

JASON BURNS,

*Plaintiff-Appellant,*

*v.*

SHERWIN-WILLIAMS CO.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-5258 — **Steven C. Seeger**, *Judge.*

———————————

ARGUED APRIL 19, 2023 — DECIDED AUGUST 15, 2023

———————————

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Jason Burns, a truck driver, injured himself while delivering products to a Sherwin-Williams paint supply store. Burns and a store employee used the company's walkie—a hand-operated electric forklift—to move pallets holding the products from Burns's truck, up a small ramp, and into the store's warehouse. When they finished unloading, Burns backed the walkie down the ramp in reverse to return the now-empty pallets to his truck. He moved in the

direction of a dumpster and other pallets that were laying on the ground beside it. But as he approached the pallets and dumpster, Burns miscalculated how long it would take to stop the walkie. He failed to stop it as he approached the pallets, trapping his foot and breaking his ankle.

Burns sued Sherwin-Williams, alleging that the company failed to exercise ordinary care by leaving the empty pallets in the work area and providing an unsafe walkie. Sherwin-Williams moved for summary judgment, arguing that it owed no duty to Burns under Illinois law and that Burns had failed to produce evidence suggesting that the walkie was unsafe. Sherwin-Williams also moved to exclude one of Burns's experts, arguing that the expert's opinions were unreliable and unhelpful. The district court granted both motions, and Burns now appeals. We affirm.

I

Jason Burns worked as a truck driver for a transportation management company. As part of his job, he delivered products to various Sherwin-Williams stores and helped with the unloading process. In May 2018, Burns made a delivery to the Sherwin-Williams store in Bolingbrook, Illinois. Burns drove to the back of the store and backed up in front of the garage. A ramp with a slight slope of about four degrees led from the parking area up to the garage door. A large dumpster was

located several feet to the right of the ramp. The photograph below shows their relative locations.



The scene looked a little different on the day of the accident, however. Unlike in the photograph above, in which there is just one pallet beside the dumpster, there were multiple pallets stacked alongside the dumpster when Burns made his delivery. These pallets were about three to four feet from the slope's edge, as shown in the next photograph (which we've rotated for an easier view).



When Burns arrived at the store, the only Sherwin-Williams employee on site, Ramiro Bahena, came out to help unload the products from the pallets. Burns climbed inside the trailer and moved the pallets to the edge of the truck. Bahena then used a walkie forklift—which is depicted in the photograph above—to lift the pallets out of the truck and move them up the small ramp into the warehouse.

A walkie differs from a prototypical forklift. It has the recognizable set of forks for moving freight but is much smaller than a standard forklift, and its operator walks behind it rather than in or on it (hence, "walkie"). The operator controls the walkie's direction with a thumb switch. Walkies can stop one of two ways. The first is by triggering the emergency

brake, designed to bring the machine to an immediate stop. Alternatively, the operator can push the thumb switch in the opposite direction, which will slow the walkie to a stop before beginning to move in the new direction. This method is known as "plugging."

Burns and Bahena repeated this process of unloading pallets a few times. At one point, Bahena went inside the store to answer a phone call. Burns began manning the walkie himself, as he had done during prior deliveries to this store. After unloading the last pallet from the truck, Burns went to retrieve the empty pallets from inside the warehouse. He drove the walkie up the ramp, entered the garage, and lifted the empty pallets. Burns then backed the walkie down the ramp. Since he was moving in a forks-trailing direction, Burns needed to rotate the walkie 180 degrees to align the load of empty pallets with his truck. He planned to do a three-point turn by backing towards the dumpster. Things did not go as planned.

As Burns backed up, he looked all around to try to avoid hitting anything. But Burns miscalculated how long it would take to stop the walkie as he approached the pallets. He first tried to come to a gradual stop by plugging the walkie forward. When he noticed the walkie wasn't stopping fast enough, he pulled the emergency brake. By then it was too late: Burns wedged his right foot between the machine and the discarded pallets, causing him to fall backwards and break his right ankle.

Burns sued Sherwin-Williams in state court, alleging that the company failed to exercise ordinary care by leaving the empty pallets in the work area and that it provided an unsafe walkie. Sherwin-Williams removed the case to federal court

based on diversity jurisdiction. After the close of discovery, Sherwin-Williams moved to exclude one of Burns's experts, Christopher Ferrone, who offered multiple opinions about the safety of the worksite and the machine. Sherwin-Williams argued that Ferrone's opinions—most of which were based on a series of tests he performed on the walkie—were unreliable and unhelpful under Federal Rule of Evidence 702. Sherwin-Williams also moved for summary judgment, arguing (1) that it owed no duty to Burns because the pallets were an open and obvious condition that he could have avoided himself, and (2) that Burns failed to produce evidence suggesting that the walkie was unsafe. The district court resolved both motions in Sherwin-Williams's favor, and Burns now appeals. We address each motion in turn.

## II

We start with the question of whether the district court erred when it granted summary judgment to Sherwin-Williams. We review this decision de novo. *Ross v. First Fin. Corp. Servs., Inc.*, 60 F.4th 1046, 1049 (7th Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we draw all reasonable inferences in the light most favorable to Burns, the nonmoving party. See *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019). Burns's claims are governed by Illinois law, so "our role is to decide questions of state law as we predict the Illinois Supreme Court would decide them." *Sutula-Johnson v. Off. Depot, Inc.*, 893 F.3d 967, 971 (7th Cir. 2018).

Burns argues that Sherwin-Williams was careless when it placed the discarded pallets by the dumpster, just a few feet

from the ramp, and that the pallets posed a hazard to workers such as himself. Burns has not specifically framed this argument as either a negligence or a premises liability claim, keeping the door open to both possibilities. But under either theory, Sherwin-Williams cannot be held liable unless it owed Burns a duty of care to protect him from the discarded pallets. *McCarty*, 927 F.3d at 471; *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014). Whether a duty exists is a question of law for the court to decide. *Bruns*, 21 N.E.3d at 689. And because we conclude that Sherwin-Williams did not owe a duty to Burns, our analysis ends there.

To determine whether a defendant owed the plaintiff a duty of care, Illinois law considers four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* at 689. If a hazard would be considered an open and obvious danger to a reasonable person, this affects how we view the first two factors (foreseeability and likelihood of injury). *McCarty*, 927 F.3d at 471. The open and obvious doctrine is an objective inquiry that considers whether a reasonable person with the plaintiff's knowledge of the situation would appreciate the risk and know to avoid the hazard. *Id.* If so, we consider the risk of harm slight and expect that person to avoid the hazard on their own. As long as the facts are undisputed, it is a question of law whether the open and obvious doctrine applies. *Bruns*, 21 N.E.3d at 690.

Burns concedes that the discarded pallets were an open and obvious condition but argues that the doctrine's deliberate encounter exception applies. This exception applies "where the possessor of land has reason to expect that the

invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Dunn v. Menard*, 880 F.3d 899, 908 (7th Cir. 2018) (cleaned up) (quoting *Sollami v. Eaton*, 772 N.E.2d 215, 223 (Ill. 2002)). Courts most commonly apply the deliberate encounter exception in circumstances involving some economic compulsion, such as when a worker "'is forced to choose between facing danger and neglecting his duties' to an employer." *Dunn*, 880 F.3d at 908-09 (quoting *Atchley v. Univ. of Chi. Med. Ctr.*, 64 N.E.3d 781, 791 (Ill. App. Ct. 2016)); see also *Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 648 (Ill. App. Ct. 2010) ("The deliberate-encounter exception recognizes that individuals will make deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of property."). The focus is on "what the landowner anticipates or should anticipate the entrant will do." *Kleiber*, 942 N.E.2d at 648.

Burns argues that the district court erred in concluding that the deliberate encounter exception did not apply and that the foreseeability and likelihood of injury were slight. The district court framed its analysis in terms of whether Burns was obligated to unload the truck in the manner that he did, by backing the walkie towards the discarded pallets and dumpster. The court concluded that, because Burns could have done the job without encountering the danger by reversing away from the pallets, the deliberate encounter exception did not apply.

On appeal, Burns contends that the district court misapplied Illinois law by focusing on the reasonableness of his actions rather than Sherwin-Williams's. He emphasizes that

Illinois law adjudges foreseeability from the perspective of what the landowner may reasonably expect the invitee would do in the face of the hazard, rather than from the plaintiff's perspective. See *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 448 (Ill. 1998). But an analysis of what a landowner may reasonably expect necessarily requires us to also consider the reasonableness of the plaintiff's actions. *Hastings v. Exline*, 760 N.E.2d 993, 997 (Ill. App. Ct. 2001) (clarifying that while we look to what the landowner could have reasonably anticipated, "analysis under the deliberate encounter doctrine must involve at least some focus on the actions and motivations of the entrant."); Restatement (Second) of Torts § 343A cmt. f (1965) (allowing recovery when the landowner "has treason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk") (relied upon in *LaFever*, 706 N.E.2d at 448). For instance, if a plaintiff's chosen course of action was completely unreasonable, we cannot say that the defendant should have reasonably foreseen the risk of harm. Here, the question is whether Sherwin-Williams should have reasonably foreseen that Burns would back up in the direction of the pallets because there was some advantage to doing so that outweighed the obvious risk. See *Dunn*, 880 F.3d at 908.

Burns focuses much of his argument on *Ralls v. Village of Glendale Heights*, 598 N.E.2d 337 (Ill. App. Ct. 1992). There, construction workers repeatedly used an ice-covered incline on a jobsite to access a particular area, even though a safer route existed. *Id.* at 341. When a foreman slipped and fell, he sued and successfully invoked the deliberate encounter exception. *Id.* at 341, 345. The court reasoned that since the other path was inconvenient, requiring workers to walk around the

entire perimeter of the site, "it was reasonably foreseeable that workers would use the shortest path." *Id.* at 344. Burns's situation is different. Unlike the workers in *Ralls*, Burns gained no advantage by backing the walkie towards the discarded pallets. He could have just as easily backed up in the opposite direction and completely avoided any danger posed by the pallets. Both paths were of equal (short) length, and required the same amount of time and effort, yet Burns chose the more dangerous one. We cannot say that this is a choice Sherwin-Williams should have reasonably foreseen. Accordingly, the deliberate encounter exception does not apply and the first two factors (foreseeability and likelihood of injury) weigh against finding a duty.

The open and obvious exception is not a per se bar to finding a duty, see *id.*, so we must turn to the third and fourth factors: the magnitude of the burden of guarding against the injury and the consequences of placing that duty on the defendant. Burns argues that requiring Sherwin-Williams to place the pallets elsewhere would impose only a minimal burden that is naturally placed on them. Maybe, but even so, this is not enough to outweigh a finding that the foreseeability and likelihood of harm were slight because of the open and obvious nature of the pallets. See *Caselberry v. Home Depot U.S.A., Inc.*, 2019 WL 10894136, at *3 (N.D. Ill. 2019) ("Possessors of land almost never owe a duty to their invitees to protect against open and obvious dangers because the foreseeability and likelihood of injury are so low."). The pallets needed to be disposed of and had to go somewhere, the natural place being by the dumpster. We find no reason to micromanage their exact placement. To do so would impose an unreasonable consequence on landowners unsupported by Illinois law. Accordingly, Sherwin-Williams did not owe Burns a duty of

care, so his claims related to the discarded pallets must fail. This leaves only Burns's claims related to the safety of the walkie.

III

We next consider whether the district court erred in excluding Christopher Ferrone's expert testimony. Burns relied on Ferrone to support his theory that the walkie was unsafe and unsuitable for the job. Though his expert report offered a list of twelve "opinions/conclusions," they can essentially be condensed into two. Ferrone opined (1) that the walkie failed to stop fast enough and (2) that the proximity of the discarded pallets to the ramp rendered the worksite unsafe. The district court found that Ferrone was qualified as an expert but that his opinions failed to satisfy the requirements of Federal Rule of Evidence 702. We agree.

Rule 702 provides that a qualified expert witness may offer an opinion only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *Anderson v. Raymond Corp.*, 61 F.4th 505, 508 (7th Cir. 2023). When analyzing whether an expert's reasoning or methodology is scientifically valid, some factors we consider are: "(1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the

technique has achieved general acceptance in the relevant scientific or expert community." *Id.* at 509 (cleaned up).

When reviewing a district court's exclusion of expert testimony, we first assess whether the court adhered to Rule 702 in coming to its decision. *Id.* If it applied the proper standard, we review the court's decision with deference and will not disturb its findings "unless they are manifestly erroneous—that is, only if they amount to an abuse of discretion." *Id.* But when we conclude that the court did not adhere to Rule 702, we review de novo. *Id.* Here, we conclude that the district court properly applied Rule 702, so we review for abuse of discretion.

Ferrone's opinion regarding the safety of the walkie was based on a series of tests. In each test, Ferrone's assistant drove an unloaded walkie before either braking or plugging. Ferrone then estimated both the time and distance it took the walkie to stop. Ferrone believed that most tests revealed no problems, with the machine stopping quickly. But Ferrone was troubled by the results of Test 12, which was designed to mimic the accident. This test consisted of four runs on the site of the accident, outside the garage and on the ramp. Ferrone's assistant backed the walkie down the ramp and initiated a stop by plugging (as Burns did on the day of the accident). Ferrone did not take any measurements for two of the runs, believing that the machine stopped in an appropriately quick manner. But for the other two runs, Ferrone estimated that it took longer (approximately 60 to 64 inches) for the machine to come to a stop. In his opinion, this extended distance indicated a defect.

The district court correctly concluded that Ferrone's first opinion—that the walkie did not stop fast enough and was

therefore unsuitable for use—was unreliable under Rule 702. It is neither "based on sufficient facts or data" nor "the product of reliable principles and methods." Fed. R. Evid. 702. A key problem with Ferrone's opinion is that there is no industry standard for how long it should take for a walkie to stop while plugging. Ferrone and both parties agree that the only standard provided in the machine's equipment manual is that a fully loaded walkie moving at full speed should stop within approximately 68 inches after braking. The manual says nothing about how long it should take to stop when not fully loaded or by plugging rather than braking. Ferrone testified that since the equipment manual states the machine will stop within 68 inches when fully loaded, it should take less time when not fully loaded. He also insisted that 60 to 64 inches is too long. But there is *nothing* Ferrone can point to in support of this conclusion. And when asked in his deposition what he believed a safe stopping distance would be, he testified, "I haven't really considered it since you asked this question. I don't know." The issue is not just that Ferrone fails to support some arbitrary line that he has drawn, but that Ferrone cannot even say where to draw it. He simply claims that wherever that line may be, 60 to 64 inches is on the wrong side.

Given all of this uncertainty, the district court did not abuse its discretion in excluding Ferrone's opinion regarding the safety of the machine as unreliable under Rule 702. The opinion cannot be tested and is not subject to peer review, we cannot determine an error rate for the tests, and the assertion that 60 to 64 inches is too far is not generally accepted in the industry. *Anderson*, 61 F.4th at 509 (citing *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 593–94 (1993)). Instead, it is a bare conclusion which was properly excluded. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) ("When

a district court concludes that there is simply too great an analytical gap between the data and opinion proffered such that the opinion amounts to nothing more than the ipse dixit of the expert, it is not an abuse of discretion under *Daubert* to exclude that testimony.") (cleaned up). Ferrone also opined that Sherwin-Williams failed to maintain the braking system on the walkie and failed to inspect the equipment. But he provides no support or foundation for these opinions. He only recites facts of the case without providing an analysis. Accordingly, this testimony is inadmissible as well. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (an expert "cannot simply assert a 'bottom line.'") (citation omitted).

Ferrone's second opinion fails to satisfy a different element of Rule 702: helpfulness. An expert witness may not offer an opinion unless "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Ferrone opined that Sherwin-Williams failed to keep its dock area in a reasonably safe condition because it allowed oversized, discarded pallets to lay by the dumpster. But this observation is entirely unhelpful because a factfinder is equally able to assess the risk posed by the pallets. The photos speak for themselves. Thus, the district court was well within its discretion to exclude this opinion.

Burns conceded at argument that he cannot prove the walkie was unsafe without Ferrone's testimony. Because we hold that Ferrone's report was properly excluded, Burns's product liability claims related to the walkie must fail.

AFFIRMED

HAMILTON, *Circuit Judge*, dissenting. I agree with my colleagues that summary judgment for defendant was proper on plaintiff's claims relating to the "walkie" forklift. The majority opinion correctly explains why plaintiff's expert testimony was properly excluded. Without that testimony there is no dispute of material fact regarding the forklift. But we should reverse summary judgment on plaintiff's claims for negligence and premises liability. Those issues should be decided by a jury. Our duty under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), is to abjure creating a federal law of Illinois torts. We should instead do our best to follow decisions of Illinois courts on these issues.

The district court held as a matter of law that the "deliberate encounter" exception to the "open and obvious danger" doctrine did not apply to this case. The court reached that conclusion because plaintiff offered no evidence that he had no choice in which direction he turned the forklift. The court wrote that the "existence of a choice — a safe path around the danger — means that the exception does not apply." *Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *9 (N.D. Ill. Sept. 18, 2022). "The exception does not apply if [Burns] could have done his job *without* encountering the danger." *Id.* (emphasis in original).

That statement of Illinois law is just flat wrong. In *LaFever v. Kemlite Co.*, 706 N.E.2d 441 (Ill. 1998), the plaintiff was doing his job picking up waste materials at the defendant's factory. He was hurt when he fell on some waste material that was dangerously slippery. The defendant argued that the danger was open and obvious and that the deliberate encounter exception could not apply unless there was no reasonable alternative available to the plaintiff's encountering the dangerous

condition. The Illinois Supreme Court squarely rejected that proposal: "The test proposed by Kemlite would require a court to decide foreseeability by measuring the reasonableness of the entrant's actions, and not those of the landowner, even though the Restatement plainly requires otherwise." *Id.* at 448, citing Restatement (Second) of Torts § 343A, comment f (Am. L. Inst. 1965).

On that basis, the Illinois Supreme Court affirmed a plaintiff's verdict in a premises liability case where the injured plaintiff had a reasonable alternative available to him but his deliberate encounter with the risk was still foreseeable. Accord, *Morrissey v. Arlington Park Racecourse, LLC,* 404 Ill. App. 3d 711, 343 Ill. Dec. 636, 935 N.E.2d 644, 656–57 (Ill. App. 2010) (reversing summary judgment for defendant, discussing *La-Fever,* and rejecting defendant's argument "that the deliberate encounter exception applies only to situations where no reasonable alternative is provided to the plaintiff" because *La-Fever* "specifically addressed and rejected" that argument); *Ralls v. Village of Glendale Heights,* 598 N.E.2d 337, 344–45 (Ill. App. 1992) (reversing summary judgment for defendant; deliberate encounter exception was available where workman was injured in taking shorter but ice-covered path, despite presence of alternative safer path). The district court here did not cite these decisions by Illinois courts on the scope of the "deliberate encounter" exception.

A decision based on such a clear mistake in applying state law should lead us to reverse. The error was not harmless because it was the fulcrum of the district court's decision. The majority opinion nevertheless affirms by assuming in effect that the Illinois Supreme Court did not actually mean what it said in *LaFever.* The majority opinion focuses on whether

plaintiff acted reasonably in backing the forklift in the direction of the dumpster and the pallets lying around it. Ante at 9, citing not *LaFever* but *Hastings v. Exline*, 760 N.E.2d 993, 997 (Ill. App. 2001).

In applying the deliberate encounter exception, Illinois courts have consistently rejected the "no alternative" requirement in cases where the injured visitor was doing his or her job and was, in the language of the cases, facing "economic compulsion" or "employment concerns." That was true in *LaFever*, *Morrissey*, and *Ralls*. It was also true in *Atchley v. University of Chicago Medical Ctr.*, 64 N.E.3d 781, 793–94 (Ill. App. 2016) (reversing summary judgment for defendant); *Grillo v. Yeager Construction*, 900 N.E.2d 1249, 1268 (Ill. App. 2008) (affirming verdict for injured workman); and *Preze v. Borden Chemical, Inc.*, 782 N.E.2d 710, 715 (Ill. App. 2002) (reversing summary judgment in part: "the scope of a defendant's duty is not defined by plaintiff's negligence").[1]

The majority opinion does not address these cases involving injuries on the job where the Illinois courts reject the "no alternative" requirement. The majority opinion relies instead on *Hastings*, where the injured plaintiff was a social visitor (the property owner's daughter-in-law). For at least two reasons, *Hastings* is not a reliable guide for our "*Erie* prediction"

---

[1] The only arguable exception involving a person injured while doing his job seems to be *Lucasey v. Plattner*, 28 N.E.3d 1046, 1057 (Ill. App. 2015), where the relationship between property owner and visitor was very different. The injured plaintiff had been hired to appraise the value of a house. He was hurt when he fell off a snow-covered retaining wall and sued the homeowners. The court affirmed summary judgment for the owners, saying they had no reason at all to expect that the appraiser would choose to climb on top of that wall as part of his appraisal.

about Illinois law here. First, as the cases cited above show, the Illinois courts have been much more receptive to the deliberate encounter exception—without insisting on proof that the plaintiff had no reasonable alternative—in cases like this one where the plaintiff was injured in the course of his or her employment. *Hastings* was different and applied a different standard. Second, the court's opinion in *Hastings* shows its disagreement with the Illinois Supreme Court's reasoning in *LaFever*. *Id*. at 996–97 (noting "tension" in *LaFever* and *Ralls*, "unexplained" points in *Ralls*, and "undeveloped" question in *LaFever*, *Ralls*, and Restatement). The *Hastings* court's resistance to *LaFever* shows it is not a reliable guide on this point of Illinois law, especially in course-of-employment cases.

The majority opinion concludes its discussion of the deliberate encounter exception in a paragraph that balances risks and burdens, concluding that plaintiff acted unreasonably. Ante at 10. That passage might be effective as a closing argument to a jury about comparative fault, but it should not be used to take the deliberate encounter issue away from a jury.

This reluctance to apply *LaFever*—especially when the plaintiff has been injured in the course of employment—seems surprisingly entrenched in federal courts in Illinois. Like the district court, the majority opinion relies on federal district court decisions applying or rejecting the deliberate encounter exception under Illinois law. With respect, those federal decisions simply cannot outweigh decisions of Illinois courts on issues of Illinois law. Similarly, in *Dunn v. Menard, Inc.*, 880 F.3d 899 (7th Cir. 2018), we affirmed summary judgment for a defendant, reasoning that the deliberate encounter exception did not apply because the injured plaintiff had another option available to him, seeking help from store

employees. *Id.* at 908, citing *Kleiber v. Freeport Farm & Fleet, Inc.*, 406 Ill.App.3d 249, 347 Ill. Dec. 437, 942 N.E.2d 640, 648 (2010). Our opinion in *Dunn* did not cite the Illinois Supreme Court's discussion of the deliberate encounter exception in *La-Fever*, perhaps because *Dunn* and *Kleiber* both involved injured customers, not people who were doing their jobs and subject to the economic pressure that plays a large role in Illinois courts' application of the deliberate encounter exception.

Our duty under *Erie Railroad* is to apply Illinois law as determined by the state's supreme court. E.g., *Smith v. RecordQuest, LLC*, 989 F.3d 513, 519 (7th Cir. 2021) ("[A]bsent a conflict with the Constitution or a federal law, we cannot overturn established state precedent. The so-called '*Erie* guess' is not an *Erie* veto."), quoting *Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co., LLC*, 920 F.3d 1141, 1146 (7th Cir. 2019). I would correct the federal courts' persistent and erroneous course on this issue of Illinois law, take *LaFever* at face value, and allow a jury to decide the reasonableness of both parties' actions. I respectfully dissent.